UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

      v.                         Case No.: 1:21-cr-367 (RDM)

MARK MIDDLETON
JALISE MIDDLETON.
     Defendants.

**OPPOSITION TO GOVERNMENT
MOTION IN *LIMINE* TO EXCLUDE IMPROPER DEFENSES**

Comes now the defendants, MARK MIDDLETON and JALISE MIDDLETON, and files this opposition to the government's motion in *limine* to exclude improper defenses.

**I.      Relevant Procedural History**

On June 26, 2023, the government filed its motion in *limine* to exclude improper defenses. The defendants now files this opposition.

**II.     Relevant Facts**

On January 6, 2021, MARK and JALISE MIDDLETON was at the U.S. Capital in the company of her husband. The Middletons were a part of a large crowd which had gathered at the Capital in response to then President Donald Trump. At approximately 2:00 pm the Middletons were located near a line of officers. The Middletons and other citizens were on one side of a 3-foot-high metal barrier. The officers were on the opposite side. The scene was chaotic and loud. Some members of the crowd were engaged in verbal exchanges with the officers. The officers were armed with anti-riot equipment to include black metal batons.

At approximately 2:02 pm the Middletons, beyond their control, were forced into contact of the 3-foot-high metal barrier which separated the officers from the crowd. As the Middletons came into contact with the barrier, officers began striking both of the Middletons with black metal

1

batons.  In response to this unprovoked attack both Middletons attempted to block the on coming

blows.  In an effort to end the attack the Middletons struck one or more of the officers with their

hands.  The Middletons were unarmed at the time of the attack. The attack escalated when officers

began spraying the Middletons with tear gas.  The tear gas caused irritation to the eyes of the

Middletons and interfered with their respiration.  Notwithstanding these difficulties the Middletons

were able to escape the attack by retreating.

### III.     Argument

### A.  Self-Defense/Defense of Others

The standard for asserting self-defense with respect to assault on a law enforcement officer

is still whether or not the police officer used excessive force.  *Coleman v. United States*, 194 A.3d

915 (D.C. 2018).  "The essence of the self-defense situation is a reasonable and bona fide belief of

the imminence of ... bodily harm." *Kinard v. United States*, 96 F.2d 522, 526 (D.C. Cir. 1938).

Distinguishing between "excessive force" and "reasonable amount of force" requires the fact

finder to take into account evidence of the defendant's mental state under the circumstances.  *See,*

*Fersner v. United States,* 482 A.2d 387, 391-92 (D.C. Cir. 1984).

When a defendant "present[s] any evidence that she acted in self-defense," the government

assumes    the    burden    of    proving,    beyond    a    reasonable    doubt,    that    she    did

not. *See Williams (Shirley) v. United States*, 90 A.3d 1124, 1128 (D.C. 2014).  A defendant who

responds to aggression in an effort to defendant herself may avail themselves of a valid self-

defense even if she acts in part out of a heightened state of emotion.  Moreover, as humans rarely

experience one emotion at a time, it is only to be expected that, in a situation where a person might

need to act in self-defense, she will experience some mix of fear and anger or indignation or

vindictiveness. *Cf. Brown v. United States*, 256 U.S. 335, 343, 41 S.Ct. 501, 65 L.Ed. 961 (1921)

(noting that as the common law of self-defense has evolved over time, "it has tended in the direction of rules consistent with human nature"). *See People v. Nguyen*, 61 Cal.4th 1015, 191 Cal.Rptr.3d 182, 354 P.3d 90, 113 (2015) ("[I]t would be unreasonable to require an absence of any feeling other than fear, before [use of force] could be considered justifiable [self-defense]."); *State v. Adviento*, 319 P.3d 1131, 1157 (Haw. 2014) (observing that "actions taken in self-defense may indeed be committed while the defendant is subject to a certain degree of terror, resentment, rage or anger"); Wayne R. LaFave, *Substantive Criminal Law* § 10.4 (c) (2d ed.) (noting that a defendant acting in self-defense "does not lose the defense because [s]he acts with some less admirable motive in addition to that of defending [her]self," as in a situation where the defendant also "us[es] force upon h[er] adversary because [s]he hates him"). In short, the government will prevail over a claim of self-defense only when it proves that the defendant did not reasonably believe that she was in imminent danger of bodily harm, *see infra* p. 27—not when it proves the defendant reasonably experienced other emotions.

Every person has the right to use a reasonable amount of force in defense of another person if (1) s/he actually believes that the other person is in imminent danger of bodily harm and if (2) s/he has reasonable grounds for that belief. The question is not whether looking back on the incident the fact finder believes that the use of force was necessary. The question is whether under the circumstances as they appeared to her at the time of the incident, actually believed that the person she was seeking to defend was in imminent danger of bodily harm and could reasonably hold that belief. *Criminal Jury instructions for the District of Columbia* Instruction 9.510 Defense of A Third Person. Fifth Edition (2014)

The Middletons fully anticipate the evidence at trial will establish sufficient facts for a jury to conclude they acted in self-defense.  As detailed above, they did not initiate or provoke the

attack suffered at the hands of law enforcement.  The force used by law enforcement was excessive and unwarranted.  And most significantly, the Middletons responded with limited force designed to halt the attack.

Further, the evidence will establish that Mrs. Middleton was standing next to her husband when she witnessed law enforcement striking him with a metal baton.  Under these circumstances she believed he was in imminent danger.  Her actions in response were designed to defend him and to halt the unprovoked attack.

### B. First Amendment Rights

The First Amendment to the United States Constitution guarantees as follows:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

The Middletons was at the United States Capitol on January 6, 2021. This highly publicized event may be deemed offensive by many members of the community and jury panel. However, any claims made concerning the Middletons attendance at the United States Capitol regarding their First Amendment rights are protected. There simply are no grounds for overriding those Constitutional rights.  Their right to be on the premises of the Capitol is a matter to be left for the jury to decide.

The evidence at trial will establish that the Middletons' presence at the Capitol on January 6, 2021, was in part to exercise their freedom of religion rights as guaranteed by the First Amendment.  Prior to being viciously attacked by law enforcement officers the Middletons were

4

standing peacefully in prayer.  Their religious beliefs caused them to be at the Capitol for that

purpose.  This Honorable Court should not preclude the Middletons from asserting such a defense.

### C.  Remaining Issues

Defendants do not oppose the Government's Motion in Limine related to the following

topics:

1. The exact locations of USCP CCTV cameras;;

2. Protocols of the U.S. Secret Service;

3. Exact locations of USCP cameras;

4.  Argue Jury Nullification.

### IV.    Conclusion

Wherefore, having filed this opposition in response to the government's motion to

preclude improper defenses, MARK and JALISE MIDDLETON, prays that this Honorable

Court deny the request and permit her to raise necessary defenses as outlined herein.

I ASK FOR THIS:

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant JALISE MIDDLETON

Steven R.Kiersh #323329
5335 Wisconsin Avenue, N.W. Suite 440

Washington, D.,C. 20015 (202) 347-0200
skiersh@aol.com
Counsel for Defendant MARK MIDDLETON

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing to be served upon all counsel of record via ECF on July 10, 2023.

_____/s/_____
Robert L. Jenkins, Jr., Esq.
United States District Court Bar No.: CO0003
Bynum & Jenkins Law
1010 Cameron Street
Alexandria, Virginia 22314
(703) 309 0899 Telephone
(703) 549 7701 Fax
RJenkins@BynumAndJenkinsLaw.com
Counsel for Defendant JALISE MIDDLETON