UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 1:21-CR-367 (RDM) |
| : | |
| JALISE MIDDLETON and : | |
| MARK MIDDLETON, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S
OPPOSITION TO THE GOVERNMENT'S OMNIBUS MOTION IN LIMINE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Reply to defendants' Response in Opposition (ECF No. 89) to government's omnibus motion in limine. (ECF No. 86). The defendants only oppose two of the government's request: (1) to preclude any claim of self-defense or defense of others, and (2) to preclude any argument that the defendants' conduct was protected by the First Amendment.

**ARGUMENT**

**I.    The Defendants Should Not Be Permitted to Argue that Their Assaults Against Police Officers Were Done in Self-Defense or Defense of Others**

In their response to the government's omnibus motions, the defendants spend a great deal of time arguing that a person who acts in a "heightened state of emotion" when they assaulted police can still assert a claim of self-defense. ECF No. 89 at 2-4. This is a misstatement of the law. It is true that a person need not be expected to have acted perfectly in their response to police uses of force, but that person still needs to have acted against a police use of force that was itself unlawful. *Fersner v. United States*, 482 A.2d 387, 390 (App. D.C. 1984) ("The trial court correctly observed that the right to use force in defense of a third person is predicated upon that other

1

person's right of self-defense (citing *Taylor v. United States*, 380 A.2d 989, 994-995 (D.C. 1977)). In this case, no person had a right to be present at the Capitol and therefore had no right to resist the efforts of police officers who sought to remove them. *See United States v. Drapeau*, 644 F.3d 646, 653 (8th Cir. 2011) ("An individual is not justified in using force for the purpose of resisting arrest or other performance of duty by a law enforcement officer within the scope of his official duties."); *see also United States v. Branch*, 91 F.3d 699, 714 (5th Cir. 1996) ("[Self-defense] principles must accommodate a citizen's duty to accede to lawful government power and the special protection due federal officials discharging official duties."). The defendants have offered no evidence to counter the government's arguments that their conduct was unlawful. Such conduct was unlawful because the defendants were resisting orders from federal law enforcement officers who were lawfully attempting to carry out a federally protected function. Therefore, no self-defense or defense of others claim may be mounted in this case.

**II.     The Defendants' Conduct Was Not Protected by the First Amendment Free Exercise Clause**

In its omnibus motion, the government argued that the defendants should not be permitted to claim that their conduct at the United States Capitol on January 6, 2021, was protected by any First Amendment right to freedom of speech. *See* ECF No. 86 at 12-17. The defendants contend in response that their conduct was protected by the First Amendment's Free Exercise Clause rather than the Freedom of Speech Clause. *See* ECF No. 89 at 3-4. For the same reasons articulated in the government's omnibus motion as to the Freedom of Speech Clause, the defendants' arguments about the First Amendment's Free Exercise Clause fail.

The Freedom of Speech and the Free Exercise Clauses work largely in tandem with each other. "Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities."

*Kennedy v. Bremerton School District*, 142 S.Ct. 2407, 2421 (2022). The right to free exercise of religion, as with the right to freedom of speech, is not an unbounded right. *Id.* at 2426 ("Under the Free Exercise Clause, a government entity [must show] that its restrictions on the plaintiff's protected right serve a compelling interest and are narrowly tailored to that end."); *see also Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 878-879 (1990) ("We have never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate."); *Minersville School Dist. Bd. of Ed. v. Gobitis*, 310 U.S. 586, 594-595 (1940) ("Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs."). If a law is neutral in its application, meaning that it does not specifically prohibit religious conduct or practices, then an individual is bound to adhere to it even if it may interfere incidentally with a particular person or group's religious practice. *Id.* at 879 (citing *United States v. Lee*, 455 U.S. 252, 263, n.3 (1982). To permit a man to disregard any law because it interfered with his religious practices "would be to make the professed doctrines of religious belief superior to the law of the land, and in effect to permit every citizen to become a law unto himself." *Reynolds v. United States*, 98 U.S. 145, 166-167 (1878).

Capitol buildings, be they state Capitol buildings or the United States Capitol are traditional fora of public opinion. *Adderley v. Florida*, 385 U.S. 39 (1966). Governments may not enact prohibitions on protest at Capitols that are "so broad and all-embracing as to jeopardize speech, press, assembly, and petition." *Id.* at 42 (citing *Edwards v. South Carolina*, 372 U.S. 229, 237 (1963)). Narrow prohibitions on First Amendment conduct are, however, permissible if they serve a compelling government interest. *Id.* Courts have held that securing the Capitol and its

3

surrounding grounds are compelling government interests. *See Community for Creative Non-Violence v. Kerrigan*, 865 F.2d 382, 391 (1989) (Capitol Police may regulate First Amendment conduct on the Capitol provided that any effort at doing so was "narrowly tailored to meet the significant governmental interest in maintaining control over Capitol Grounds."); *see also Jeanette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp 575, 580 (1972) (The government may exclude from the Capitol "any group which is noisy, violent, armed, or disorderly in behavior, any group which has a purpose to interfere with the processes of Congress, any member of Congress, congressional employee, visitor or tourist; and any group which damages any part of the building, shrubbery, or plant life.")

Here, the laws at issue were both neutral and served a compelling government interest and survive scrutiny under both the Free Speech and Free Exercise Clauses. The laws are neutral because they were not targeted at religious practice *per se* but instead, first, at protecting the Capitol grounds from unauthorized visitors during the construction of the inaugural stage, the visit of Secret Service protectees, and an ongoing joint session of Congress and, second, at preventing any of those unauthorized visitors from assaulting police officers who sought to remove them. Any contention to the contrary would, in effect, permit a person to violate any law so long as they wrapped such a violation in religious belief, thus permitting "every citizen to become a law unto himself." *Reynolds*, 98 U.S. at 166-167; *Minersville School Dist.*, 310 U.S. at 594-595.

The laws also serve a compelling government interest, that being the security of the Capitol, its grounds, and those inside. *Kerrigan*, 865 F.2d at 391. The restrictions set in place around the Capitol on January 6 were meant to exclude a group that was "noisy, violent, armed, [and engaged in] disorderly in behavior" and whose "purpose to interfere with the processes of Congress." *Jeanette Rankin Brigade*, 342 F. Supp at 580. On January 6, 2021, a limited area

4

immediately surrounding the Capitol had been closed for a limited time and did so in such a way that anyone who wished to protest against or pray about the proceedings inside of the Capitol could still do so within sight and earshot of the building. The closed area was marked with signs, fences, and gates around the entire area of the Capitol, along with an increasingly heavy police presence guarding the building. The defendants' knowledge of these signs and other indicators that they were in a closed area is a matter of fact to be decided by the factfinder. This limited closure was not so overbroad that it prohibited all First Amendment activity at any time in the vicinity of the Capitol. *Adderley*, 385 U.S. at 42 (citing *Edwards*, 385 U.S. at 39). Therefore, the closure of the Capitol Grounds on January 6, 2021, does not violate either the Free Speech or Free Exercise Clauses of the First Amendment. *Ibid.*

## **CONCLUSION**

Based on the above, the government respectfully requests that its omnibus motion in limine be granted in full.

|  |  |
|---|---|
|  | Respectfully submitted, |
| DATED: December 1, 2023 | MATTHEW M. GRAVES<br>United States Attorney<br>D.C. Bar No. 481052 |
| By: | */s/ Sean P. McCauley*<br>SEAN P. McCAULEY<br>New York Bar No. 5600523<br>Assistant United States Attorney<br>United States Attorney's Office<br>For the District of Columbia<br>601 D Street, NW 20530<br>Sean.McCauley@usdoj.gov |
|  | Brendan Ballou<br>DC Bar No. 241592<br>Special Counsel<br>United States Attorney's Office<br>For the District of Columbia<br>601 D Street NW<br>Washington, DC 20001<br>(202) 431-8493<br>brendan.ballou-kelley@usdoj.gov |