UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 1:21-CR-367 (RDM) |
| : | |
| JALISE MIDDLETON and : | |
| MARK MIDDLETON, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANTS' MOTION TO SUPPRESS EVIDENCE**

The defendants, Jalise and Mark Middleton, stormed the Capitol grounds on January 6, 2021, in an attempt to stop the certification of the presidential election. On that day, they breached the restricted perimeter, trespassed over the grounds, shoved bike racks against officers, grabbed police, and tried to steal a baton. For their actions, the Middletons were arrested on April 21, 2021. The defendants now seek to have any evidence from their cell phones suppressed. For the reasons described below, their motion should be denied.

**I.     Argument**

On April 20, 2021—one month after the attack on the Capitol—Magistrate Judge Dena Palermo in the Southern District of Texas found probable cause to issue a search warrant for the Middletons' home and two of their phones. (The application and order are filed under seal as Exhibits 1 and 2, respectively). Two months later, the Middletons were arrested, and their house searched. In that search, the FBI recovered two phones: one that Jalise Middleton carried (ending in -9352), and another that Mark Middleton carried (ending in -3269). The defendants seek to suppress the evidence from these phones.

In support of their motion, the defendants make two arguments. *First*, they argue that the government failed to show that the phones were "connect[ed]" to the attack on January 6. ECF

1

No. 99 at 5.  *Second*, they argue that the government failed to show that the phones were "connect[ed]" to the Middletons.  *Id.* at 5-6.  It's not quite clear what the defendants mean by "connect[ed]," but their primary argument seems to be that the government did not sufficiently explain why it believed the phones were owned by the Middletons or used at the Capitol.

In making their argument, the defendants bear a heavy burden.  An "affidavit offered in support of a search warrant enjoys a presumption of validity." *United States v. Rhine,* 21-CR-0687 (RC), 2023 WL 2682258, at *2 (D.D.C. Mar. 29, 2023) (quoting *United States v. Maynard*, 615 F.3d 544, 550 (D.C. Cir. 2010))."  In initially considering such search warrants, the "task of the issuing magistrate is simply to make a practical, commonsense determination of whether probable cause exists." *United States v. Nozette*, 692 F. Supp. 2d 110, 111 (D.D.C. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)).  Finding such "[p]robable cause is not a high bar," *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (cleaned up), and in challenging the sufficiency of a warrant, the defendant bears the burden of proving the subsequent search was improper.  *United States v. Manafort*, 313 F. Supp. 3d 213, 219 (D.D.C. 2018) (citing *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)).

### A. The Affidavit Showed That The Middletons Likely Used Phones on January 6, 2021

The government presented ample evidence that the seized devices might contain evidence of the defendants' crimes.  In its affidavit, the government explained that:

- The Middletons were at the Capitol on January 6, 2021, and posted content to their Facebook accounts that day.  Ex. 1 at 24.

- On January 6, Mark Middleton published a video to Facebook from the Capitol grounds, in which he bragged that, "We are on the front lines." *Id.* at 25.

2

- Both defendants published pictures to Facebook less than two hours after they attacked police. These pictures showed other rioters and, in one case, Jalise Middleton herself. *Id.* at 25-27.

- Both defendants posted comments to Facebook just hours after their attack, describing what they had done. *Id.* at 25-28. For instance, Jalise Middleton wrote that, "We fought the cops to get in the Capital [sic] and got pepper sprayed and beat but by gosh the patriots got in!" *Id.* at 27. Mark Middleton, meanwhile, wrote that, "I got tear gassed pepper sprayed and clubbed." *Id.* at 26.

- Jalise Middleton posted selfies of herself and Mark Middleton at the National Mall and the Capitol on or around January 6.

Together, the photos, video, and selfies, not to mention near-contemporaneous commentary about what they did, more than showed that the Middletons likely used phones during their attack on the Capitol or, at a very minimum, to document the crimes that they committed there.

### B. The Government Had Authority To Seize The Middletons' Devices

The government had authority to seize the Middletons' devices. The affidavit identified two phones to search: one with a phone number ending in -9352 (Jalise Middleton's phone), the other ending in -3269 (Mark Middleton's). The FBI found these phones on the Middletons when they were arrested. But it's worth noting that the actual scope of the search warrant was considerably broader, and authorized the government to seize any "[d]igital devices used in the commission of, or to facilitate," the Middletons' crimes. *Id.* at 64.

The government was not required to prove that the Middletons "owned" these phones. *See, e.g.*, *United States v. Smith*, 19-CR-324 (BAH), 2021 WL 2982144, at *7 (D.D.C. July 15, 2021) ("[W]here agents could not have known which device a defendant used to engage in the conduct

relevant to the search, courts have upheld warrants broadly authorizing the seizure of '[a]ny computers, cell phones, and/or electronic media that could have been used as a means to commit' described offenses." (quoting *United States v. Loera*, 59 F. Supp. 3d 1089, 1151–52 (D.N.M. 2014)). Where the "affidavit plainly provided probable cause to believe that one or more of defendant's cell phones would contain evidence of the offense," as was the case here, "the warrant was not overbroad simply because it did not particularly describe the phone . . . ." *Id.* In fact, here the government did describe the phones, by their phone number. The defense seems to demand an explanation for how the government identified the phones. But neither the case law nor the constitution requires such specificity.

Moreover, the government was not required, as the defendants suggest, to show that the phones to be seized were the ones used on January 6, 2021. The Middletons were arrested less than four months' after the attack on the Capitol. It was thus a "practical, commonsense determination," *Nozette*, 692 F. Supp. 2d at 111, that the phones seized from their persons were likely the same used at the Capitol. Even if the phones were not the same, by well it's now well known that people frequently share data—pictures, videos, and messages—across devices. The affidavit suggests as much, noting that the Middletons likely used their phones to post to their social media accounts. Ex. 1 at 35. The devices would likely contain evidence of the Middletons' crimes, whether they were brought to the Capitol or not.

Finally, it would be virtually impossible to show, before any search, that the phones to be seized were the specific phones used at the Capitol. This is why courts frequently do not require a showing that specific devices to be seized are those involved in a crime. *See, e.g.*, *United States v. Smith*, 19-CR-324 (BAH), 2021 WL 2982144, at *8 (D.D.C. July 15, 2021) (finding "reason to

4

believe that other devices in the residence—even if they did not belong to defendant—would contain evidence of the offense," even if those devices were not specifically identified.).

### C. Even If The Search Warrant Were Invalid, Suppression Would Be Unwarranted

Even if this Court found that the government failed to establish probable cause to seize the Middletons' phones, the remedy would not be to suppress the evidence derived from them. "[E]vidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." *United States v. Leon*, 468 U.S. 897, 919 (1984). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *United States v. Washington*, 775 F.3d 405, 407 (D.C. Cir. 2014) (quoting *Leon*, 468 U.S. at 898). Thus "we ordinarily do not suppress evidence seized pursuant to a search warrant unless the warrant affidavit was 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *United States v. Cardoza*, 713 F.3d 656, 659 (D.C. Cir. 2013) (quoting *Leon*, 468 U.S. at 923).

The officers' reliance on the search warrant was objectively reasonable. The affidavit—57 pages long, plus another 21 pages in attachments and supporting documents—describes in detail not just the events of January 6, 2021, but the Middletons' role in it, their use of social media, the reason for searching the defendants' phones, and the various technical terms throughout. It would be hard to think of how a non-lawyer could find the affidavit insufficient, or what more detail they might know to ask for. Even if this Court can find ways to improve upon the original search application, Judge Jackson's conclusion in *United States v. Manafort* applies equally well here:

> [T]he evidence seized while executing the warrant for the residence should not be suppressed even if this Court could find reasons to differ with the issuing magistrate. The agents were acting within the scope of a valid warrant when they conducted the search, and their reliance on the warrant issued by the Magistrate Judge was objectively reasonable. According to the Supreme Court, in those circumstances, exclusion is not the appropriate remedy.

314 F. Supp. 3d 258, 268 (D.D.C. 2018).

## CONCLUSION

The government provided ample evidence why the phones found on the Middletons might contain evidence of their crimes in support of the warrant, which was properly issued. Moreover, the agents who seized and searched the phones reasonably relied on that warrant. For the reasons above, the defendants' motion should be denied.

Respectfully submitted,

DATED: December 1, 2023

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Brendan Ballou
Brendan Ballou
DC Bar No. 241592
Special Counsel
United States Attorney's Office
601 D Street NW
Washington, DC 20001
(202) 431-8493
brendan.ballou-kelley@usdoj.gov

Sean P. McCauley
NY Bar No. 5600523
Assistant United States Attorney
601 D Street NW
Washington, DC 20579
(202)252-1897
Sean.McCauley@usdoj.gov